**SHANNON CHIA**, et al.,

    **Plaintiffs,**

**vs.**          CIV. No. 01-1278 JP/DJS

**THE UNITED STATES OF AMERICA,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

On February 5, 2002, the United States filed a motion to dismiss plaintiffs' first amended complaint (Doc. No. 11). Having carefully considered the parties' briefs and the relevant law, this court finds that the motion to dismiss should be granted.

**I. Background**

Rex Freeland sustained severe brain injuries as a result of oral surgery performed by employees of the Gallup Indian Medical Center on May 10, 1999. He was fifteen years old at the time of the surgery and is now in a permanent vegetative state. The United States was found liable in a Federal Tort Claims Act ("FTCA") action brought on behalf of Rex Freeland. *See Freeland v. United States*, Civ. No. 99-1500 MV/WWD. On November 9, 2001, this action was filed by Shannon Chia, Terrance Chia, Rolanda Freeland and Yolanda Freeland (Rex Freeland's "older siblings"), and by Roselyn Chia as the mother and next friend of Rodricana Freeland, Roxanda Freeland, Roshanda Freeland and Roderick Freeland (Rex Freeland's "younger siblings"). The complaint asserts that all eight siblings have suffered "loss of consortium and loss

1

of the company and companionship of Rex Freeland." Plaintiffs' Complaint, Doc. 1 at ¶19. The complaint further alleges that Rex Freeland's four younger siblings "have lost the guidance and counseling of their older brother." *Id* at ¶20. The plaintiffs attribute these injuries to the United States based on the prior determination of liability for Rex Freeland's injuries, and on their contention that, "it was foreseeable that harm to Rex Freeland would result in exactly the sort of emotional and mental pain and suffering" experienced by the plaintiffs. *Id.* at ¶¶18, 21.

In its Motion to Dismiss under FED. R. CIV. P. 12(b)(6), the United States contends that (1) plaintiffs cannot state a claim for negligent infliction of emotional distress;[1] (2) plaintiffs cannot state a claim for loss of consortium; and (3) the four younger siblings cannot state a claim for loss of guidance and counseling. Motion to Dismiss, Doc. 4 at 1. The United States additionally argues that this action must be dismissed for failure to join in the action brought on behalf of Rex Freeland as required by New Mexico law. Memorandum in Support of Motion to Dismiss, Doc. 5 at 11. Plaintiffs filed an amended complaint on January 23, 2002 in order to cure two jurisdictional defects pointed out by the United States. *See* First Amended Complaint, Doc. 8 at ¶¶ 12-13; Memorandum in Support of Motion to Dismiss, Doc. 5 at 2-3 (indicating that the plaintiffs did not state jurisdictional grounds and did not allege exhaustion of administrative remedies). The United States then filed a Motion to Dismiss Plaintiffs' First Amended Complaint, asserting the same three substantive grounds for dismissal. *See* Motion to Dismiss First Amended Complaint, Doc. 11. Its supporting memorandum again advances that the plaintiffs' consortium claims should be dismissed for failure to join in the action brought on behalf of Rex Freeland.

---

[1] In their responding memorandum, plaintiffs state that they are not making a claim for NIED. Memorandum in Response, Doc. 9 at 2.

Memorandum in Support of Motion to Dismiss First Amended Complaint, Doc. 12 at 10.

## II. Applicable Law

The Federal Tort Claims Act provides that the district courts will have jurisdiction in civil actions against the United States, "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurs." 28 U.S.C. § 1346(b). The plaintiffs claim to have suffered loss of consortium as a result of the negligence of federal employees in the state of New Mexico,[2] making New Mexico law applicable in this action. *See Wark v. United States*, 269 F.3d 1185, 1187 (10th Cir. 2001) ("the FTCA applies the law of the place where the alleged negligence occurred and makes the United States liable to the same extent as a private person under like circumstances").

## III. Motion to Dismiss

### A. Standard

In ruling on a motion to dismiss for failure to state a claim on which relief may be granted, the pleadings must be liberally construed, the well pleaded facts must be taken as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Swanson v. Bixler*, 750 F. 2d 810, 813 (10th Cir. 1984). A claim may be dismissed only if the plaintiff can prove no set of facts that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U. S. 41, 45-46 (1957).

---

[2]The parties assume that New Mexico law applies in this action although it is not entirely clear whether the Gallup Indian Medical Center is located on tribal land or whether tribal law would apply if the Medical Center is in fact located on Navajo land. This issue also came up in the action brought on behalf of Rex Freeland. *See Freeland v. United States*, Civ. No. 99-1500 MV/WWD (assuming that New Mexico law would apply for purposes of a summary judgment motion, but noting Navajo law might instead govern).

## B. Loss of Consortium

The United States contends that New Mexico law requires joinder of consortium claims with the underlying personal injury or wrongful death action. Memorandum in Support of Motion to Dismiss First Amended Complaint, Doc. 12, at 10. Because the plaintiffs did not join in the medical malpractice action brought on behalf of Rex Freeland, the United States insists that the plaintiffs' claims for loss of consortium must be dismissed. *Id.*

In *Fernandez v. Walgreen Hastings Co.*, 126 N.M. 263, 273, 968 P.2d 774, 784 (1998), the New Mexico Supreme Court held that grandparents could assert a cause of action for loss of consortium of grandchildren, provided they could meet a specific test of foreseeability outlined in that opinion. The court rejected an argument that the recognition "would lead to increased litigation and multiple claims," asserting that such a problem "is easily solved by requiring joinder of a parent's or grandparent's loss of consortium claim with the child's negligence action." 126 N.M. at 272, 968 P.2d at 783. Since the court spoke only of claims brought by parents and grandparents, it is conceivable that the joinder rule was not intended to apply to claims brought by siblings. However, the only possible way siblings could recover for loss of consortium under current New Mexico law would be to meet the specific foreseeability test of *Fernandez,* making the joinder requirement applicable. Furthermore, if policy concerns regarding increased litigation and multiple claims prompted the New Mexico Supreme Court to require joinder of consortium claims brought by parents and grandparents it would be illogical not to require joinder of even more novel consortium claims such as those brought by siblings. Thus, the government correctly asserts that New Mexico law would compel the plaintiffs to join their claims with those of Rex Freeland. This court must therefore decide whether to adhere to the state's joinder requirement in

a FTCA action.

The plaintiffs' Memorandum in Response to Defendant's Motion to Dismiss lists six reasons why their consortium claims should not be dismissed for failure to join in the initial action. *See* Memorandum in Response to Motion to Dismiss First Amended Complaint, Doc. 13 at 8-9. Only two warrant substantial discussion.[3] In both, the plaintiffs rely on the federal nature of this cause of action in insisting that the state rule should not be applied. In the first, plaintiffs assert that, "to the extent that joinder is a procedural, rather than a substantive issue, New Mexico case law is neither binding nor persuasive upon this Court." Memorandum in Response, Doc. 13 at 9. The second relates to the administrative claim requirements of the Federal Tort Claims Act. The Act provides that prior to filing an action against the United States under the Federal Tort Claims Act the plaintiff must have presented his or her claim to the "appropriate federal agency" and that

---

[3] Four of the plaintiffs' arguments may more easily be rejected. They assert that since New Mexico has not yet recognized claims for loss of consortium brought by siblings, "joining eight varied and unproven claims to Rex Freeland's compelling malpractice claim would have compromised Rex Freeland's claim to relief." Memorandum in Response to Motion to Dismiss First Amended Complaint, Doc. 13 at 8. This argument provides insufficient justification for a decision not to apply the state's joinder rule because it assumes, inappropriately, that the presiding judge in the FTCA action would be unable to decide independently the merits of each plaintiff's claim. The plaintiffs make a similarly untenable argument when they cite the New Mexico Supreme Court's decision that allowed the grandmother's claim to proceed in *Fernandez* as a reason for not requiring joinder here. *See Id.* at 9. In *Fernandez,* the court stated that it did not require joinder "because the claim recognized today did not exist when Plaintiff filed suit." 126 N.M. at 272 n.4, 968 P.2d at 783 n. 4. However, *Fernandez*, which gave notice of the need to join consortium claims, had been decided before Rex Freeland's case was filed. Since the plaintiffs would have to rely on *Fernandez* in order to recover, they should not be able to escape the joinder rule simply because they are siblings instead of grandparents. The plaintiffs also argue that the government would not be prejudiced by allowing this case to proceed. Memorandum in Response, Doc. 13 at 8-9. However, New Mexico's joinder requirement is not grounded in preventing prejudice to the defendant but instead in minimizing potential increases in litigation. Furthermore, the government would be prejudiced in that it would be subject to a suit that may otherwise have been barred. Finally, the plaintiffs assert that because the original action "has been tried to a verdict, and because the doctrine of Collateral Estoppel applies in New Mexico, it is actually simpler, cheaper and more efficient" to try this case separately. *Id.* at 9. In making this argument, the plaintiffs incorrectly assume that New Mexico's law of collateral estoppel could be substituted for its compulsory joinder rule in the event that the state's rules of preclusion are applied. However, New Mexico has chosen to apply a form of claim preclusion in the consortium context by adopting a rule of mandatory joinder, making collateral estoppel unavailable in a separately brought consortium suit for the simple reason that such a separate suit is not permitted.

5

claim must have, "been finally denied by the agency in writing." 28 U.S.C. § 2675. The action brought on behalf of Rex Freeland was filed on December 28, 1999 and tried by United States District Judge Martha Vazquez in June of 2001. Judge Vazquez rendered her decision in favor of Rex Freeland on August 21, 2001. The plaintiffs filed their administrative claims in May of 2001, and therefore maintain that they could not have brought this action until after those claims were denied.

Though there are not many decisions directly on point, a few federal district courts have considered whether to apply, in a FTCA action, a state's rule that consortium claims must be joined with the underlying personal injury or wrongful death action. For example, in *Santoni v. United States*, 450 F.Supp. 608, 610 (D. Md. 1978), a husband did not file a separate administrative claim but later attempted to bring a consortium claim in his wife's FTCA action against the United States. The court observed that "Maryland law requires that a claim for loss of consortium be instituted as a joint action," and dismissed the couple's loss of consortium claim since the husband's failure to file an administrative claim precluded him from joining in the action. *Id.* In reaching this decision, the court cited two cases in which spouses had attempted to bring separate consortium actions under the FTCA. Both resulted in dismissal. *Id.*

The District of Alaska has also applied a state's compulsory joinder rule in a FTCA action. In *Letasky v. United States*, 783 F.Supp. 451 (D. Alaska 1992), a wife settled her personal injury claim while her husband's administrative claim for loss of consortium was still pending. Following denial of his administrative claim, the husband brought suit. The court observed that Alaska requires joinder of a consortium claim with claims of a spouse, except in "special cases that render it impossible for the parties to bring suit together." *Id.* at 452. The court then

6

declared that it had "no doubt" that the plaintiff and his wife would have had to bring their claims jointly in accordance with Alaska law if neither of them had settled with the government. However, it concluded that settlement of the wife's claims made it "legally impossible" for the husband to join his claim with hers and consequently permitted him to pursue his consortium claim separately.

Courts sitting in diversity have also applied state rules requiring joinder of consortium claims with the underlying personal injury or wrongful death action. For example, in *Kirchoff v. American Casualty Co. of Reading, Pennsylvania*, 779 F.Supp. 131, 132-133 (D.S.D. 1991), the federal district court concluded that South Dakota law requires joinder of consortium claims with the spouse's personal injury claim, and accordingly dismissed a separately-brought consortium claim. Similarly, in *Huggins v. The Sea Insurance Co.*, 710 F.Supp 243 (E.D. Wis. 1989), there was some question as to whether Wisconsin (the state whose law was applicable in the diversity action) would require joinder of a consortium claim with the personal injury action. The court did not resort to federal procedure, but instead looked to Wisconsin substantive law, ultimately concluding that the Wisconsin Supreme Court would require joinder of a child's consortium claim with the parent's personal injury action. *Id.* at 250. It subsequently noted that there were no substantial barriers to joinder and granted the defendant's motion for summary judgment on the consortium claim. *Id.* at 251.

Although not large in number, the courts which have addressed this issue have uniformly applied the state's compulsory joinder rule as part of state substantive law in FTCA and diversity actions. This court will follow that trend by applying New Mexico's joinder requirement.

Before concluding analysis of this issue, the court will address plaintiffs' argument that it

was impossible for them to join in Rex Freeland's lawsuit since their administrative claims had not been submitted and denied at the time that lawsuit was filed. *See* Memorandum in Response, Doc. 13 at 8. As discussed above, in *Letasky v. United States*, 783 F.Supp. 451, 452 (D. Alaska 1992), the court allowed the plaintiff to pursue a loss of consortium claim separately despite the state's joinder requirement after deciding that the plaintiff could not have joined his claim with those of his wife. In deciding to require joinder in *Fernandez v. Walgreen Hastings*, 126 N.M. 263, 272, 968 P.2d 774, 783 (1998), the New Mexico Supreme Court, unlike the Alaska Supreme Court, did not explicitly create an impossibility exception. But, even assuming that New Mexico's joinder rule has an implicit impossibility qualification, it is difficult to understand why the plaintiffs should be able to avoid the ramifications of the joinder rule in this case. This case is fundamentally different from *Letasky* because the settlement in that case prevented the initiation of the action in which the spouse should have joined. In contrast, the plaintiffs in this case could have joined in the action brought on behalf of Rex Freeland if they had simply filed their administrative claims promptly. As the government notes, "plaintiffs failed to join their loss of consortium claims with the medical malpractice action brought on behalf of Rex Freeland despite the facts that the medical malpractice case was pending...for over a year and one-half and the attorneys in both cases are the same." Memorandum in Support, Doc. 12 at 10.

In a different context, a federal district court expressed policies that are persuasive in this case. In *Lafayette Credit Union v. United States*, 76 F.Supp.2d 645, 647 (D. Md. 1999), the plaintiffs initially sued the government under the Administrative Procedure Act. Following dismissal of their first suit, plaintiffs filed a second action under the FTCA. *Id.* at 648. In the second action, the plaintiffs attempted to avoid the application of res judicata by asserting that

they could not have brought their FTCA claims in the first action due to the pendency of their FTCA administrative claims. *Id.* at 650. The court rejected this argument stating, "as masters of their own claims, plaintiffs were in full control of the dates for filing their suit and the FTCA administrative claims." *Id.* It further declared that the plaintiffs had "disregarded the procedural means available to them for remedying the situation," observing that they could have asked for a stay of the original action, waited to the file first action until their administrative claims had been denied, or filed their administrative claims sooner. *Id.* at 650-651.

The policies expressed in *Lafayette* are equally applicable here. Since the plaintiffs have not provided an adequate excuse for failing to file their administrative claims soon enough to join in the lawsuit brought on behalf of Rex Freeland (and in fact, waited a year and a half after institution of that lawsuit to even file their administrative claims), they should not be allowed to benefit from the later resulting "impossibility." Thus, New Mexico's compulsory joinder rule operates to bar this action, and the plaintiffs' consortium claims will be dismissed.

In addition, this Court would dismiss the consortium claims of Rex Freeland's younger siblings on the independent ground that New Mexico law requires that non-spousal family members bringing consortium claims be familial caretakers of a minor child.

In 1994, New Mexico became the last state to lift its common law bar against spousal consortium claims. *See Romero v. Byers*, 117 N.M. 422, 425-426, 872 P.2d 840, 843-844 (1994). Due to this relatively recent recognition, the precedent in New Mexico regarding loss of consortium is sparse. Only three New Mexico cases are of any consequence to the issue of whether siblings may recover damages for loss of consortium.

The first, *Solon v. Wek Drilling Co.*, 113 N.M. 566, 829 P.2d 645 (1992), arose before

9

New Mexico's recognition of spousal consortium in *Romero*. In *Solon*, parents alleged that they had suffered loss of consortium due to the death of their 25-year old son. The New Mexico Supreme Court announced that it was, "not inclined to reexamine...the law in New Mexico disallowing recovery for loss of consortium," because foreseeability of harm to the parents was, "just too glaringly absent to convince [it] to recognize a cause of action in their favor." *Solon*, 113 N.M. at 571, 829 P.2d at 650. The court declared that, "while it is foreseeable that someone who is not provided a safe place to work will have living parents, the same can be said of the other relatives standing in an 'intimate familial relationship' with a tort victim: his or her spouse, parent, child, grandparent, grandchild, brother, sister, and (in the case of a minor) others occupying a position in loco parentis." *Solon*, 113 N.M. at 571, 829 P.2d at 650. According to the court, "the social policy of cutting off the liability that would otherwise extend to these family members seems sound, at least in a case in which they allege no more palpable injury than claimed" by the parents in that case. *Solon*, 113 N.M. at 571, 829 P.2d at 650.

Two years later, the New Mexico Supreme Court recognized a cause of action for loss of spousal consortium in *Romero v. Byers*, 117 N.M. 422, 425-427, 872 P.2d 840, 843-845 (1994). The court took cognizance of the claim, in part, based on its conclusion that the test for determining whether a duty is owed had evolved in such a way that the state's common law already imposed a duty in favor of a surviving spouse. *Romero*, 117 N.M. at 426, 872 P.2d at 844.

In *Fernandez v. Walgreen Hastings Co.*, 126 N.M. 263, 273, 968 P.2d 774, 784 (1998), the New Mexico Supreme Court provided an opportunity for a grandmother to recover damages for loss of consortium based on the death of her grandchild. It cited *Romero* for the proposition

that duty is the basis for incorporating claims into New Mexico law, and held that the same duty analysis used in *Romero* should apply to a grandmother's claims for loss of consortium. *Fernandez,* 126 N.M. at 272-273, 968 P.2d at 783-784. Yet, the court did not simply apply New Mexico's general duty analysis, but instead focused on one of the necessary components of duty--foreseeability of the plaintiff--and created a specialized test. It held that foreseeability could exist where, "(1) the victim was a minor; (2) the plaintiff was a familial care-taker, such as a parent or grandparent, who lived with and cared for the child for a significant period of time prior to the injury or death; (3) the child was seriously physically injured or killed; and (4) the plaintiff suffered emotional injury as a result of the loss of the child's companionship, society, comfort, aid, and protection." *Fernandez,* 126 N.M. at 273, 968 P.2d at 784.

Although the court in *Fernandez* initially spoke of grandparents specifically,[4] it does not appear that the test of foreseeability applies exclusively to grandparents. The second element of the test refers to, "a familial care-taker such as a parent or grandparent.." *See* 126 N.M. at 273, 968 P.2d at 784. "Such as" suggests that the test was not intended to apply only to parents and grandparents. Furthermore, the court gave a general explanation of its holding without mentioning grandparents specifically. It stated that, "it is foreseeable that a negligent actor may cause harm or injury to a minor child's caretaker and provider of parental affection," and that it "is not unreasonable to compensate such a family caregiver for loss of consortium." 126 N.M. at 273, 968 P.2d at 784. Moreover, the court asserted that, "merely because the plaintiff is a

---

[4]For example, the court referred to the "special legal status" enjoyed by grandparents based on New Mexico Stat. § 40-9-2 (1993).

11

grandparent of the child should not foreclose an award of damages if he or she is able to prove the elements identified above." If the court were simply creating a subset of foreseeable grandparents it would have had no need to specify that grandparental status would not preclude application of the specialized test. It accordingly appears that the foreseeability test allows for a duty to be owed to a certain class of familial caretakers. Not all grandparents may recover for loss of consortium, and other familial caretakers--perhaps even siblings--may be eligible for consortium recovery.

The plaintiffs allege in their First Amended Complaint that Terrance Chia, Yolanda Freeland, Rolanda Freeland and Shannon Chia lived with and cared for Rex Freeland. First Amended Complaint, Doc. 8 at ¶¶ 18, 20. It is therefore conceivable that the older siblings could prove facts satisfying the specific foreseeability test. The United States argues that the older siblings cannot possibly satisfy the *Fernandez* test. It notes that Terrance Chia was not living with Rex Freeland at the time of the injury, that the plaintiffs "were not responsible for the care of Rex," and that "there were also two parents living in the home." Memorandum in Support, Doc. 12 at 8-9. However, by its terms, the *Fernandez* test requires only that the plaintiff be a "familial caretaker...who lived with and cared for the child for a significant period of time prior to the injury." 126 N.M. at 273, 968 P.2d at 784. Thus, the United States raises arguments that would potentially be relevant at later stages of the litigation but that do not mandate dismissal under FED. R. CIV. P. 12(b)(6). This court would accordingly be inclined to at least consider allowing the claims of the older siblings to proceed in the absence of the joinder requirement. Rex Freeland's younger siblings, in contrast, cannot claim to be familial caretakers. This Court would therefore dismiss their consortium claims even in the absence of the joinder

requirement.

In sum, all of the plaintiffs' consortium claims will be dismissed due to their failure to join in the medical malpractice action brought on behalf of Rex Freeland. The consortium claims of Rex Freeland's younger siblings will also be dismissed for failure to state a claim on which relief may be granted.

**C. Loss of Guidance and Counseling**

In their First Amended Complaint, plaintiffs allege that each of the four younger siblings has suffered loss of the guidance and counseling of Rex Freeland. First Amended Complaint, Doc. 8 at ¶ 27. They claim that the four children were dependent on Rex for, "support, assistance, advice, good humor, and direction," and that this was particularly true at the time of Rex's injury, given that their father had moved out of the family home, "leaving Rex as the oldest male in the household with responsibilities for his younger siblings." *Id.* at ¶21. The United States argues that the plaintiffs have failed to state a claim for loss of guidance and counseling, asserting that such a claim may be brought only under the New Mexico Wrongful Death Act. Reply to Memorandum in Response, Doc. 16 at 10.

In *Sears v. Nissan*, 117 N.M. 422, 428-429, 872 P.2d 840, 846-847 (1994), the New Mexico Supreme Court held that the loss of guidance and counseling suffered by the decedent's two minor children could be assessed as part of the value of the decedent's life in a wrongful death action. No cases following *Sears* have significantly explored this subject. New Mexico courts have not extended the cause of action to others who had a close relationship with the decedent in a wrongful death action, and have not recognized such a claim outside the context of the Wrongful Death Act. *See Otero v. City of Albuquerque*, 125 N.M. 770, 773, 965 P.2d 354,

357 (Ct. App. 1998) (identifying the possibility that a cause of action for loss of guidance and counseling might not exist outside the Wrongful Death Act in noting that the court in *Sears* held only that loss of guidance and counseling could be considered by the jury when assessing pecuniary loss under the Wrongful Death Act).

Citing *Sena v. New Mexico State Police*, 119 N.M. 471, 477, 892 P.2d 604, 610 (Ct. App. 1995) (holding that loss of enjoyment of life--also initially recognized in *Sears* in the wrongful death context--could be pursued in a personal injury action for non-fatal injuries), plaintiffs make an argument that loss of guidance and counseling would probably be extended to cases of severe injury. Yet, even if loss of guidance and counseling could be based on permanent injury, plaintiffs would still face the significant hurdle of establishing that it should be made available to younger siblings. The plaintiffs' attempt to analogize Rex Freeland to a parent by characterizing him as the "oldest male in the household," *see* First Amended Complaint, Doc. 8 at ¶21, is unconvincing. Furthermore, there is currently no indication that the New Mexico Supreme Court would choose to extend loss of guidance and counseling to siblings if confronted with the issue. Even the plaintiffs concede that apparently no other jurisdiction has recognized a cause of action for loss of guidance and counseling of an older sibling. *See* Memorandum in Response at 11. This court consequently holds that the four younger plaintiffs' claims for loss of guidance and counseling are not cognizable under current New Mexico law and should be dismissed under FED. R. CIV. PRO. 12(b)(6).

IT IS THEREFORE ORDERED that Defendants' "Motion to Dismiss First Amended Complaint" is GRANTED, and all of the plaintiffs' claims will be dismissed with prejudice.

_____
CHIEF UNITED STATES DISTRICT JUDGE